

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-12-2003

# USA v. Lopez

Precedential or Non-Precedential: Precedential

Docket No. 02-1111P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Lopez" (2003). *2003 Decisions.* Paper 304.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/304

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed August 11, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1111

UNITED STATES OF AMERICA,

v.

ALBERT LOPEZ,

*Appellant*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Judge: Honorable William J. Nealon
D.C. No. 01-cr-00084-1

Argued April 11, 2003

BEFORE: BARRY and ROSENN, *Circuit Judges,*
and POLLAK,* *District Judge*

(Filed: August 11, 2003)

Daniel I. Siegel (Argued)
Office of the Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101

Counsel for Appellant

---

* Honorable Louis H. Pollak, District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

Matthew E. Haggerty, Esq.
Christian A. Fisanick, Esq. (Argued)
Office of United States Attorney
Federal Building, P.O. Box 309
Scranton, PA 18501

Theodore B. Smith, III, Esq.
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
Harrisburg, PA 17108

Counsel for Appellee

---

## OPINION OF THE COURT

---

POLLAK, *District Judge*.

Albert Lopez, a federal prisoner, was convicted of (1) possession of heroin, in violation of 18 U.S.C. § 844(a), and (2) possession of contraband by an inmate, in violation of 18 U.S.C. § 1791(a)(1). On appeal, Lopez challenges two evidentiary rulings of the District Court, as well as the District Court's ruling that the government's voir dire peremptory challenge of a black jury panelist was not keyed to the impermissible factor of race.

Because we agree with appellant Lopez that the statements of two government witnesses that they had "received information" that Lopez possessed heroin constituted inadmissible hearsay, and that the District Court's erroneous admission of those statements was not harmless, we reverse and remand for a new trial.

# I

In 1991, Lopez began serving a 140-month sentence for participating in a conspiracy to distribute cocaine. After periods of confinement in federal penitentiaries in Leavenworth, Kansas, and Lompoc, California, Lopez in 1997 was transferred to the Federal Correctional Institution Schuylkill (FCI Schuylkill), in Minersville, Pennsylvania, where the events leading to the criminal conviction now under review took place.

On June 7, 2000, prison officials received information that inmate Lopez was in possession of heroin. Based on that information, prison officials conducted a search of Lopez's cell, during which they recovered twenty small packets of heroin from inside a sock, which was inside a laundry bag located on the floor near Lopez's bunk. A drug screen submitted by Lopez later that day tested positive for morphine, which is consistent with, though not conclusive of, the use of heroin.

Prison officials referred the matter to the FBI, and on June 12, 2000, a federal agent arrived at FCI Schuylkill and read Lopez his *Miranda* rights. Lopez declined to waive his rights or to be interviewed. On March 13, 2001, a grand jury returned a two-count indictment against Lopez, alleging that he had possessed heroin in violation of 21 U.S.C. § 844(a), and that he had possessed contraband in violation of 18 U.S.C. § 1791(a)(1).

After a two-day trial that began on August 20, 2001, a jury convicted Lopez on both counts. On November 30, 2001, the Court sentenced Lopez to 37 months imprisonment, followed by two years of supervised release.

## II

Lopez presents three issues on appeal. The first concerns the District Court's ruling admitting, under Federal Rule of Evidence 404(b), Lopez's 1991 federal conviction for conspiracy to distribute cocaine. We review a trial court's decision to admit evidence of a prior conviction for abuse of discretion. *See United States v. Saada*, 212 F.3d 210, 220 (3d Cir. 2000). For the reasons stated below, we find that the District Court did not abuse its discretion in admitting evidence of Lopez's 1991 conviction. The second issue concerns the District Court's ruling that the statements of two prison officials that they had "received information" that Lopez possessed heroin did not constitute inadmissible hearsay. Whether the challenged third-party statements were hearsay is a question of law subject to plenary review. *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993). We conclude that those statements constituted hearsay and that the District Court erred in admitting them. We further

conclude that the District Court's error was not harmless. We therefore remand the case for a new trial. In light of our resolution of the second issue, we find it unnecessary to address the third issue—namely, whether the District Court erred in deciding that the government's peremptory strike of a black jury panelist did not contravene the Supreme Court's constitutional directive, in *Batson v. Kentucky*, 476 U.S. 79 (1986), prohibiting the exercise of peremptory challenges on the basis of race.

## A

Prior to trial, Lopez filed a motion in limine urging that his 1991 conviction for participating in a conspiracy to distribute cocaine be excluded from evidence. Specifically, Lopez contended that the conviction was irrelevant, that any marginal relevance that it might possess was outweighed by the potential for prejudice, and that it constituted inadmissible character evidence under Rule 404(b). After defense counsel, Patrick Casey, raised the issue at a conference immediately preceding trial, the following exchange occurred:

> THE COURT: Why are you objecting to that?
>
> MR. CASEY: That is, again, 404(b) evidence. If he testifies, he will be open game for that conviction, but the fact that he's not . . .
>
> THE COURT: They're not offering it to impeach. They are offering it to show general intent, knowledge, absence of act of mistake and opportunity to obtain.
>
> MR. CASEY: Its simply prejudicial.
>
> THE COURT: A lot of relevance, I suppose, could be called prejudicial.

The Court then overruled Lopez's motion to exclude the evidence. Later in the conference, the Court "put on the record that [it had] concluded that [the 1991 conviction, along with other contested evidence,] is relevant and the probative value of the issue of intent, knowledge, absence of incident[1] or mistake and opportunity to obtain.

---

1. We presume that the phrase, "absence of incident," reflects a mistranscription, and that the passage instead should read, "absence of

Furthermore, I conclude that the probative value is not substantially outweighed by prejudice to the Defendant."

The upshot of the Court's ruling was that an FBI agent was permitted to testify that, at the time the heroin was discovered in his cell, Lopez was serving a sentence for participating in a conspiracy to distribute cocaine.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). For evidence of past bad acts to be admissible, "(1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its potential for unfair prejudicial effect under Rule 403; and (4) the Court must charge the jury to consider the evidence only for the limited purpose for which it is admitted." *United States v. Vega*, 285 F.3d 256, 261 (3d Cir. 2002) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)). Resolution of the present case turns on the first prong of this admissibility inquiry—whether Lopez's prior conviction had a proper purpose under Rule 404(b).[2]

Lopez relies chiefly on this court's decision in *United States v. Sampson*, 980 F.2d 883 (3d Cir. 1992), the facts of which are similar to those in the case at bar. At issue in *Sampson* was the District Court's decision permitting the government to introduce evidence of the defendant's prior conviction for possession with intent to distribute cocaine, for the purpose of proving that the defendant, who was in state prison at the time, was guilty of possessing marijuana. Prison officials had found several balloons filled

accident." *See* Rule 404(b), which states that evidence of "other crimes, wrongs, or acts" may be admissible to show, among other things, "absence of mistake or accident."

2. Lopez has not raised as an issue in this appeal the third prong of the *Vega* test. Therefore, we do not consider whether the prejudicial effect of the prior bad act evidence might have outweighed its probativeness.

with marijuana in the defendant's coat pocket, and although defendant admitted that he owned the coat, he denied knowledge of the balloons. In finding the prior conviction admissible, the District Court noted only that it was "inclined to think that this is the kind of incident which does fall within the purview of the exceptions listed in 404(b)." *Id.* at 885.

As the *Sampson* court observed, "[t]here is no question that, given a proper purpose and reasoning, drug convictions are admissible in a trial where the defendant is charged with a drug offense." *Id.* at 887. "[W]here the evidence only goes to show character, or that the defendant had a propensity to commit the crime, it must be excluded. Where, however, the evidence also tends to prove some fact besides character, admissibility depends upon whether its probative value outweighs its prejudicial effect." *Id.* For prior offense evidence to be admissible, however, the government "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed drug offenses before, he therefore is more likely to have committed this one." *Id.* Further, "[t]he district court . . . must in the first instance . . . articulate reasons why the evidence also goes to show something other than character. Unless the reason is apparent from the record, a mere list of the purposes found in rule 404(b) is insufficient." *Id.* at 888. Based on this standard, the *Sampson* court concluded that because the District Court had neglected to construct the requisite chain of inferences—instead merely noting that the challenged evidence fell within the purview of the 404(b) exceptions—its admission of the prior conviction amounted to an abuse of discretion.

Although we agree with Lopez that the District Court in the present case could have been more explicit in articulating the chain of logical inferences warranting the admission of Lopez's prior conviction, that omission is not dispositive of the admissibility question. "The prime inquiry is whether the evidence is probative of a material issue other than character." *United States v. Boone*, 279 F.3d 163, 187 (3d Cir. 2002) (citing *Huddleston*, 485 U.S. at 687)).

We are satisfied that, viewed in the full context of the oral argument on the defendant's various Rule 404(b) motions to exclude, the District Court's reasons for admitting Lopez's prior conviction are sufficiently apparent to warrant upholding its ruling. It is clear from the record that when, in announcing its ruling, the Court recited a number of permissible Rule 404(b) purposes—the "mere list" on which Lopez bases his objection—it was endorsing the government's position that the challenged evidence was admissible for the purpose of rebutting the defendant's anticipated claim of innocent association with, and lack of knowledge of, the heroin found near his bunk. That position had been elaborated, largely in reference to the defendant's motion to exclude another piece of proffered evidence, in an extended exchange immediately preceding the Court's prior-conviction ruling.[3] The propriety of this

---

3. The exchange centered on the defendant's Rule 404 motion to exclude the results of two urine tests—one taken 15 months before, and one taken immediately after, the heroin was discovered in Lopez's cell—showing that Lopez had used morphine, a result consistent with, but not conclusive of, the use of heroin. With respect to the first urine test, the prosecutor, AUSA Matthew Haggerty, stated:

> [T]he Third Circuit said in United States versus Butch, [256 F.3d 171 (3d Cir. 2001),] in cases of innocent association, which it's the only defense that could be made, . . . [that evidence of past drug involvement is admissible.] There's 180 cell mates on the cell floor. [Lopez] had a cell mate, he has others that he's friends with. The fact that he's found sleeping with a bag of heroin underneath his bed, the only defense I could see is innocent association. It's not mine. It's my cell mate's, or it's my friend's or somebody that was in the cell, and I didn't know this was here. We're saying he's going to say it's not mine, and the Third Circuit says you can use prior convictions and prior bad acts to show that, to refute that argument of innocent association.

Shortly thereafter, the Court pointed out to Mr. Casey that, according to *Butch*, "such evidence is permissible to show criminal intent and absence of innocent association." After Mr. Casey then attempted to persuade the Court that the factual circumstances did not present an issue of innocent association, the Court inquired of him: "Assuming possession is established, wouldn't it be relevant to show knowledge that it was heroin, . . . isn't evidence that he had used the heroin in the confinement of prison some year or so earlier, evidence that he knew what was in that bag that he possessed was heroin?"

position is illustrated by recent decisions of this court upholding the admission of evidence of prior drug involvement for the purpose of rebutting defense claims of innocent association, and to prove criminal intent. *See United States v. Givan*, 320 F.3d 452, 461 (3d Cir. 2003); *United States v. Vega*, 285 F.3d 256, 261-62 & n.2 (3d Cir. 2002); *United States v. Butch*, 256 F.3d 171, 177 n.5 (3d Cir. 2001); *Boone*, 279 F.3d at 187-88. In light of the foregoing, we cannot say that the District Court abused its discretion in admitting evidence of Lopez's prior conviction.

## B

At trial, the government called as witnesses Officers James Fosnot and Kenneth Gabrielson, the prison officials who discovered the heroin during the search of Lopez's cell. The following exchange occurred during AUSA Matthew Haggerty's examination of Officer Fosnot:

MR. HAGGERTY: Why did you search — why did you search of the cell of Albert Lopez?

THE WITNESS: We received information —

MR. CASEY: Objection, hearsay.

THE COURT: Overruled.

THE WITNESS: We received information that Inmate Lopez might be carrying drugs on his person or in his cell.

Later, the following exchange occurred during Mr. Haggerty's examination of Officer Gabrielson:

MR. HAGGERTY: And on June 7th of 2000, did you have reason to search the cell of Albert Lopez?

THE WITNESS: Yes, sir.

MR. HAGGERTY: And why did you do that?

THE WITNESS: I received information that —

MR. CASEY: Objection, hearsay.

THE COURT: Overruled. It's just information.

. . .

THE WITNESS: I received information that Albert Lopez was in possession of heroin and that he was keeping that heroin on his person, and when I received that information, I took the information to the SIS Lieutenant, which is Joseph Reed, and he instructed myself —

MR. CASEY: Objection, hearsay.

THE COURT: Overruled. Were you instructed just to search the cell?

. . .

THE WITNESS: Yes, that's what we continued to do.

Finally, Mr. Haggerty invoked the above-excerpted testimony during his closing argument:

If I could for a minute, I would like to go over some of the evidence that is presented here, kind of from the beginning to the end, and kind of see what I think is important. The things that you heard from this witness stand, if you will recall, we called James Fosnot and Ken Gabrielson, two of the officers that had searched Albert Lopez's cell on June 7th.

They testified that they had information that Albert Lopez was in possession of heroin. It wasn't a random search. They weren't walking by and decided to go in. They had information that he had heroin in the cell. So what did they do? They . . . went to Albert Lopez's cell on June 7th to search it for this heroin.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The question of "[w]hether evidence is hearsay is a question of law subject to plenary review." *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993).

Our analysis is guided by our opinion in *Sallins*. The defendant in *Sallins*, who previously had been adjudged

guilty of a felony, was convicted of possessing a firearm. Under review was the District Court's decision to admit, over defense counsel's objection, the arresting officer's testimony that when he encountered the defendant he was searching for a person described in a police radio dispatch as a "black male wearing all black clothing carrying a gun on the 2500 block of North Franklin Street." *Id.* at 345. At issue was whether the prosecutor had offered this testimony merely as "background information," in order to explain the officer's presence at the site of the arrest, as the government claimed, or rather to prove the truth of the matter asserted—that is, that the defendant had possessed a firearm. This court acknowledged in *Sallins* that "[s]everal courts have admitted testimony by police officers or government agents revealing information received out-of-court for the limited purpose of establishing background for the officers' actions," but observed that the use of such statements for that purpose had been subject to "widespread abuse." *Id.* at 346. "If the hearsay rule is to have any force," we cautioned, "courts cannot accept without scrutiny an offering party's representation that an out-of-court statement is being introduced for a material non-hearsay purpose." *Id.*

In *Sallins*, this court conducted a searching evaluation of the government's purported need to introduce the third-party suspect description, and concluded that the content, if not the fact, of the radio dispatch was unnecessary either to account for the presence of the arresting officers at the scene of the arrest, or to explain why the officers had pursued and arrested the defendant (one of the officers saw the defendant throw what he thought may have been a gun underneath a car). "Not only was the testimony regarding the radio call inadmissible to show background," we observed, "it clearly was not offered for that purpose. The absence of a tenable non-hearsay purpose for offering the contents of the police radio call establishes that the evidence could have been offered only for its truth value." *Id.* at 347.

Finally, the government's closing argument, in which the prosecutor repeatedly asked rhetorically whether it could be "just a coincidence" that the defendant matched the

suspect description in the radio dispatch, "dispell[ed] any conceivable doubt as to the true evidentiary purpose of the disputed testimony."[4] *Id.* Because the details of the radio call were thus "offered for their truth value," the court concluded, "the testimony was hearsay and should have been excluded." *Id.*

In the instant case, as in *Sallins*, the absence of any direct evidence that Lopez possessed the prohibited object—that is, the heroin—informs our evaluation of the purported purpose for which the government offered the challenged statements. Lopez's defense centered on his attempt to develop reasonable doubt about whether the heroin belonged to him. To that end, defense counsel sought at trial to raise the possibility that the laundry bag in which the heroin had been found belonged to Lopez's cell mate, or that the heroin had been placed in the bag by one of the more than one hundred members of the defendant's prison unit who allegedly had access to Lopez's cell. Lopez also notes that defense counsel established at cross-examination that government investigators "lost possession" of the laundry bag during the course of the investigation, thus further compromising the prosecution's effort to assign possession. Because the question of possession itself was the principal issue in dispute, the prospect that the out-of-court statements were used to prove the truth of the matter demands close scrutiny.

Further, there clearly were alternative means available to the government to establish the factual context of the officers' search of Lopez's cell. As the *Sallins* court

---

4. The prosecutor stated:

> [C]ould it be just a coincidence that the defendant is wearing dark clothing, that matches the description on the radio call? Could it be just a coincidence that the defendant is a black male? That also matches the description of the radio call. Could it be just a coincidence that the defendant is on the 2500 block of North Franklin Street? That's the location that was put in on the radio call. . . . Was it just a coincidence that the defendant was there about a minute after the call was put in? . . . Could that just be a coincidence?

*Id.*

suggested, "testimony that [an officer] acted 'upon information received,' or words to that effect, should be sufficient." *Id.* at 346 (quoting *McCormick On Evidence* § 249, at 104 (4th ed. 1992)). In the present case, the government could have accounted for the search of Lopez's cell in similarly general terms.

Finally, the government's emphatic invocation of the officers' testimony during closing argument could only have served to strengthen the jury's perception that the officers' "information that Albert Lopez was in possession of heroin" was itself a datum in the construction of the government's substantive case. Specifically, the prosecutor reminded the jury that Officers Fosnot and Gabrielson had "testified that they had information that Albert Lopez was in possession of heroin. It wasn't a random search. They weren't walking by and decided to go in. They had information that he had heroin in the cell." We thus conclude that the challenged statements constituted inadmissible hearsay, and that their introduction at trial was improper.

Having concluded that the District Court erred in overruling defense counsel's hearsay objection, we now inquire whether that error nevertheless was harmless. "The inquiry cannot be merely whether," notwithstanding the error, "there was enough to support the [conviction]." *Government of the Virgin Islands v. Toto*, 529 F.2d 278, 283 (3d Cir. 1976) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). Rather, "if one cannot say . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Id. See also Sallins*, 993 F.2d at 348 ("An evidentiary error is harmless only if it is highly probable that the improperly admitted evidence did not contribute to the jury's judgment of conviction."). In the case at bar, the government did introduce substantial evidence apart from the improperly admitted hearsay that Lopez possessed heroin, foremost among which was the fact that Lopez tested positive for morphine shortly after the heroin, which is broken down into morphine in the body, was discovered in his cell. The dispositive question, however, is not whether, in the absence of the inadmissible hearsay evidence, the jury nevertheless could have convicted Lopez.

Rather, the question is whether the improperly admitted statements may have helped to "cement[ ] the government's case by adding an invisible, presumably disinterested witness" to corroborate the government's position. *Sallins,* 993 F.2d at 348. Notwithstanding the incriminating results of Lopez's urine test, there is no direct evidence that Lopez possessed heroin on the day prison officials discovered it near his bunk. For that reason, and in light of the defense's not implausible argument that the heroin could have been placed there by any of the more than one hundred inmates who had relatively unrestricted access to Lopez's cell, we are not confident that the improperly admitted hearsay statements did not help to "cement" the jury's judgment of conviction. We therefore conclude that the District Court's error was not harmless. Accordingly, we reverse appellant's conviction and remand for a new trial.

Finally, costs should not be taxed against the United States in this criminal appeal.

A True Copy:
        Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*