

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-30-2007

# USA v. Cannon

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3855

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Cannon" (2007). *2007 Decisions*. Paper 1403.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1403

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3855

———

UNITED STATES OF AMERICA

v.

HAROLD CANNON,

*Appellant*

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-00434-1)
District Judge: Honorable Lawrence F. Stengel

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 12, 2007

Before: FUENTES, VAN ANTWERPEN, and SILER,* *Circuit Judges*.

(Filed:  March 30, 2007)

———

OPINION OF THE COURT

———

———————

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth
Circuit, sitting by designation.

VAN ANTWERPEN, *Circuit Judge*.

Appellan Harold Cannon was convicted by a jury of possessing cocaine and cocaine base (i.e., "crack"), in violation of 21 U.S.C. § 844(a), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Cannon now challenges the admission at his trial of an out-of-court statement, made by an unidentified woman, that he possessed a gun. He argues this statement was inadmissable hearsay and violated his rights under the Confrontation Clause. Cannon also claims 18 U.S.C. § 922(g), the felon-in-possession statute, is unconstitutional. For the reasons set forth below, we will affirm the District Court's judgment of conviction.

## I.

At Cannon's suppression hearing (and subsequently at his trial), Philadelphia Police Officer Brent Darden testified to the following. Around 12:15 a.m. on December 24, 2003, he and his partner, Officer Charles Wells, were driving in an unmarked car in a residential section of South Philadelphia. While driving, they observed an argument between a group of individuals on the sidewalk and a man hanging out of a second-floor window above them. The officers stopped their car near the group and heard two of the individuals on the sidewalk, Harold Cannon and Benjamin Campbell, engage in loud and heated exchanges with the man in the window. The officers then heard Campbell say to the man in the window, "I'm going to shoot you." At that point, the officers got out of their car and walked toward the group. As the officers approached the group, Campbell ran and Cannon walked up to Darden and told him that the argument was over and the

1

group was disbanding. Cannon then continued past the officer, walking away from the group.

Darden next testified that just seconds after Cannon had passed him, another member of the group, an unidentified woman, approached the officer and told him that Cannon had a gun. Darden immediately told two officers who had just arrived at the scene in another unmarked car that Cannon was armed and should be stopped. Darden then turned around and noticed that Cannon had started running. At that point, the officer chased Cannon on foot and the two officers in their unmarked car pursued Cannon in their vehicle.

During the chase, Darden testified that he saw Cannon stop running, pull a gun from his waistband, squat next to a car, and throw the gun under the car and into the street. After apprehending Cannon with the help of the two officers in the unmarked car, Darden went back to the location where Cannon had stopped and retrieved a nine-millimeter handgun. One of the other officers searched Cannon's pockets and found packets of drugs and a magazine for a nine-millimeter gun loaded with six rounds.

Darden also testified that he later learned that, as he pursued Cannon, his partner, Officer Wells, pursued and arrested Campbell, the member of the group who had threatened to shoot the man in the window.

After providing this testimony at the suppression hearing, Cannon's attorney cross-examined Darden, questioning him about why the police pursued Cannon instead of Campbell: Q. Okay, but you heard [Campbell] say that he was going to shoot the guy

2

upstairs?  A. Yes.  Q. But you weren't focused on [Campbell].  You were focused on this guy [Cannon] who came up to you and said, "Oh, they're just having an argument?"  A. Yes.  Transcript of Suppression Hearing at 27-28.  And, in his closing statement at the conclusion of the hearing, Cannon's attorney argued that it was illogical for the officers to pursue Cannon when Campbell had been the one who made the threat:

> And I would point to pieces of testimony that would call into question the credibility of [Officer Darden].  That is an officer who's allegedly heard another individual threaten to shoot somebody, and yet he chases with two other officers an individual that walks right past him and talks to him on the basis of nothing other than an anonymous allegation.  Instead he leaves his fellow officer to chase . . . a guy who's threatened to shoot somebody by himself, and I would suggest that that just doesn't make sense.  It's not what you would expect from an officer with at least eight years in service.

Transcript of Suppression Hearing at 39-40.

After hearing defense counsel's arguments, but before the trial commenced, the prosecutor sought to introduce testimony at trial that Darden's pursuit of Cannon was logical in light of the unidentified woman's tip.  According to the prosecutor, this fact was being offered not for its truth, but to explain why three of the officers pursued Cannon when he had not been the one who had threatened to shoot the man in the window.  Cannon objected that the prejudice of this statement would outweigh its probative value.  The District Court overruled Cannon's objection and permitted the prosecutor to introduce the fact, although it indicated it would give a limiting instruction

3

at the time the testimony was elicited.[1]  Such a limiting instruction, however, was never given.

## II.

The District Court had jurisdiction over this criminal matter pursuant to 18 U.S.C. § 3231 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over all of the issues Cannon presents: whether an out-of-court statement of a third party is hearsay, *United States v. Price*, 458 F.3d 202, 205 (3d Cir. 2006); whether an out-of-court statement violates the Confrontation Clause, *United States v. Lore*, 430 F.3d 190, 208 (3d Cir. 2005); and, whether the federal felon-in-possession statute is constitutional, *United States v. Singletary*, 268 F.3d 196, 199 (3d Cir. 2001).

## III.

Cannon raises two claims with respect to the unidentified woman's statement. First, he argues the statement constituted inadmissable hearsay under law in this Circuit that limits the government's ability to introduce out-of-court statements to explain police action.  Second, he argues the statement's admission violated his rights under the Confrontation Clause.  Because we find the limit on out-of-court statements used to explain police action does not apply in this case and because the out-of-court statement was not testimonial, we must reject Cannon's claims.  We also find the District Court's

---

[1]The unidentified woman's comment was referenced by the prosecutor in her opening and closing and by Officers Darden and Brook during their testimony.

failure to provide the jury with a limiting instruction at the time the unidentified woman's statement was admitted was harmless.

*A. Hearsay*

Cannon first argues the unidentified woman's out-of-court statement is inadmissable hearsay under *United States v. Sallins*, 993 F.2d 344 (3d Cir. 1993). Because we believe *Sallins* does not extend to cases where defendants place at issue police motives that can only be explained by reference to out-of-court statements, Cannon's claim must fail.

In *Sallins*, an anonymous 911 caller reported that a black male wearing all black clothing was carrying a gun at a particular location in Philadelphia. When police officers arrived at the location, they observed Sallins, a man who matched the description, walking down the street. According to the officers, Sallins threw down a gun and ran when he saw their vehicle. At trial, the officers revealed the contents of the 911 call, purportedly to explain why they went to the location and acted as they did. The prosecution then incorporated the contents of the 911 call into its closing argument, repeatedly asking the jury to consider whether it was coincidental that Sallins matched the description given by the caller and possessed a gun.

We reversed Sallins' conviction, holding the contents of the 911 call were offered not for background purposes, but for their truth. We explained, "[w]hile officers generally should be allowed to explain the context in which they act, the use of out-of-court statements to show background has been identified as an area of widespread

5

abuse." *Sallins*, 993 F.2d at 346 (citation and quotation omitted).  Such abuses can give the government's case an unfair advantage, "adding an invisible, presumably disinterested witness who allegedly saw precisely what the police said they saw."  *Id*. at 348.  In order to avoid the potential for abuse, courts must independently assess whether an out-of-court statement is hearsay, and not simply rely on the government's assurances to the contrary.  *Id*. at 346.  In analyzing the 911 call at issue in *Sallins*, we found "[t]he absence of a tenable non-hearsay purpose for offering the contents of the police radio call establishes that the evidence could have been offered only for its truth value."  *Id*. at 347.  Consequently, the District Court should have permitted the police to explain their actions only by testifying that they acted "'upon information received,' or words to that effect."  *Id*. (citation omitted).

Since *Sallins*, we have twice considered the limits on offering out-of-court statements for background purposes.  In *United States v. Lopez*, 340 F.3d 169 (3d Cir. 2003), prison officials were permitted to testify that an anonymous tip led them to the drugs found in an inmate's cell.  We found the testimony regarding the tip to be inadmissable hearsay for the following reasons: the government emphatically invoked the tip in its closing; there was no direct evidence linking the inmate to the drugs; and it would have been easy for the government to establish the context of the search without reference to the tip.  *Id*. at 176-77.  Consequently, we reversed the inmate's conviction and remanded for a new trial.

*United States v. Price*, 458 F.3d 202 (3d Cir. 2006), another *Sallins*-type hearsay

6

challenge, involved the testimony of three police officers performing drug surveillance. The first testified that he observed a suspect take a gun from his pants and place it in the trunk of his car. The other two officers, both of whom were in radio contact with the first but neither of whom could see the suspect, testified that they approached and ultimately searched the suspect because they had learned from the first officer that the suspect had taken a gun from his pants and placed it in his trunk. The suspect argued that *Sallins* was an absolute bar to the hearsay testimony of the latter two officers. In response, we explained "*Sallins* did not hold that it could never be the case that a background explanation might, in order to serve its legitimate background evidentiary function, require inclusion of prejudicial details insofar as they constituted an integral part of the explanation for the officer's actions." *Id*. at 210. Furthermore, we found *Sallins* and *Lopez* did not require the exclusion of the two officers' testimony because "our underlying concern in those cases was that the government was seeking to indirectly present testimony from an unseen eyewitness who did not himself appear." *Id*. at 209. In *Price*, since both officers testified, there was no "unseen eyewitness" and the *Sallins* rule did not apply.

In his appeal, Cannon argues our holdings in *Sallins* and *Lopez* dictate we find the out-of-court statement of the unidentified woman inadmissable hearsay. He claims the woman's statement was offered for its truth and that Officer Darden could have simply testified that he chased Cannon "upon information received" without reference to the woman's statement. We disagree.

7

Cannon's defense strategy became clear at the suppression hearing: He planned to attack the credibility of police witnesses and question their logic in pursuing Cannon, a man who walked peacefully by them, instead of Campbell, the man who police had heard threaten the man in the window with a gun. Indeed, this is what occurred. In his opening statement, Cannon's lawyer questioned why police would even pursue Cannon: "So, three officers go chasing after the one guy that they have this unknown person telling them that he's got a gun, and they let the guy who's threatening to shoot somebody upstairs be chased by one officer, allegedly." App. at 41. And, in Cannon's closing argument, he claimed the officers' actions did not make sense: "Does that make sense to you . . . ? [D]oes he go with his partner, to chase a guy that may very well have a gun? . . . Or does he go after the guy who didn't say anything about having a gun . . . ?" App. at 275.

When it became apparent at the suppression hearing that Cannon would attempt at trial to characterize the officers' actions as nonsensical, the prosecutor sought to introduce the unidentified woman's statement as evidence as to why three officers would begin chasing an individual who appeared to be acting lawfully. If the prosecutor was not permitted to introduce this evidence, Cannon could have undermined the officers' credibility with impunity.

We believe that defense counsel may not transform *Sallins*' shield against overly-explicit background testimony into a sword that undercuts government witnesses and makes their actions seem illogical. Once, as here, it is clear defense counsel plans to attack the motivations of police witnesses, the government may introduce background

8

evidence that explains why the witnesses acted as they did.  Countering a defense

counsel's attack on the motivations of police witnesses is one of the "tenable non-hearsay

purpose[s]" for which out-of-court statements may be admitted under *Sallins*.

Accordingly, the unidentified woman's statement was not hearsay and was

properly admitted at Cannon's trial.

*B. Confrontation Clause*

In *Crawford v. Washington*, the Supreme Court interpreted the Confrontation

Clause of the Sixth Amendment as barring the "admission of testimonial statements of a

witness who did not appear at trial unless he was available to testify, and the defendant

had had a prior opportunity for cross-examination."  541 U.S. 36, 53-54, 124 S.Ct. 1354

(2004).

More recently, in *Davis v. Washington*, the Supreme Court expounded on the

meaning of testimonial:

> Statements are nontestimonial when made in the course of police
> interrogation under circumstances objectively indicating that the
> primary purpose of the interrogation is to enable police assistance to
> meet an ongoing emergency. They are testimonial when the
> circumstances objectively indicate that there is no such ongoing
> emergency, and that the primary purpose of the interrogation is to
> establish or prove past events potentially relevant to later criminal
> prosecution.

__ U.S. __, 126 S.Ct. 2266, 2273-4 (2006).  The Court further explained that testimonial

statements describe *in hindsight* how *past* events began and progressed.  *Id*. at 2278.

Such statements are akin to live, in-court statements made by a witness on direct

9

examination. *Id.* In contrast, nontestimonial statements describe events that are presently unfolding and alert police to a dangerous situation that requires resolution. *Id.* at 2279. They can manifest themselves as cries for help or descriptions of present circumstances requiring police assistance. *Id.* at 2276.

Cannon argues the unidentified woman's statement is testimonial because she was not seeking assistance when she said it and her statement was not necessary to resolve an ongoing emergency. We disagree. When Officers Darden and Wells arrived at the scene, there was an ongoing disturbance. Cannon and Campbell were screaming at another man and Campbell ultimately yelled to the man in the window, "I'm going to shoot you." As the officers approached the group, it was not clear that the situation had resolved itself. Campbell was running from the officers and Cannon was attempting to distance himself from the group and police. When the woman warned Darden that Cannon had a gun, Darden was standing with his back to a potentially armed man who was just steps away. And, when Darden turned around, Cannon fled.

On these facts, it is evident the unidentified woman's statement was made during an ongoing emergency. She was not describing a past event at some remove in time, but warning the officer about a present characteristic of a man who had just slipped past him. Admittedly, the woman's statement was not an outright call for help. Nevertheless, the statement warned police about a present and proximate danger. In sum, we find the woman's statement described an event as it was unfolding and helped ensure the safety of police and those in the area of the disturbance. As a consequence, the statement was

10

nontestimonial and Cannon did not have a right to confront the woman who made it.

*C. The Limiting Instruction*

Although the admission of the unidentified woman's statement did not violate the law of this Circuit or the Confrontation Clause, the District Court should have provided a limiting instruction to the jury as it had promised. However, because the failure to provide this instruction was harmless, it will not affect our decision.

Under Federal Rule of Criminal Procedure 52(a), even if a district court errs by failing to give a limiting instruction, we will not disturb the court's decision unless the error harmed the defendant. In this case, its is clear the District Court's failure to instruct the jury to not consider the unidentified woman's statement for its truth was harmless because there was direct evidence of Cannon's being a felon in possession: He was carrying a magazine containing six nine-millimeter shells in his pocket. (The felon-in-possession statute covers the possession of "any firearm or *ammunition*." 18 U.S.C. § 922(g).) As a result, the unidentified woman's statement linking Cannon to the handgun was not needed to bolster Officer Darden's testimony that Cannon disposed of a handgun while being chased. That is, even if we were to completely discount the woman's statement and Darden's testimony, there remains evidence that Cannon violated § 922(g) by possessing ammunition. Given this direct evidence, we find the failure to give a limiting instruction upon the admission of the unidentified woman's statement was harmless and Cannon's claim must fail.

IV.

11

Cannon finally argues that the felon-in-possession statute, 18 U.S.C. § 922(g), is unconstitutional under the Commerce Clause because the statute does not regulate commerce or any sort of economic activity. As a consequence, the District Court lacked subject matter jurisdiction over Cannon's case.

In *United States v. Singletary*, we rejected this same argument and upheld § 922(g) as a valid exercise of Congressional power under the Commerce Clause. 268 F.3d 196 (3d Cir.2001). In light of *Singletary*, Cannon's claim must fail.[2]

## V.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[2] Cannon admits he only advances this argument in an effort to preserve it for Supreme Court review.