**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3812
_____

UNITED STATES OF AMERICA

v.

ROMEL ANTHONY
a/k/a "DAME"
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cr-00180-014)
District Judge:  Honorable Mitchell S. Goldberg
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 15, 2021
_____

Before:  GREENAWAY, JR., KRAUSE, and PHIPPS, *Circuit Judges*.

(Opinion filed: November 15, 2022)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

Romel Anthony appeals his conviction for attempted possession with the intent to distribute cocaine and his resulting 125-month prison sentence. In contesting his conviction, he challenges the sufficiency of the government's evidence at trial as well as two evidentiary rulings related to cell phone records. He also contends that the District Court erred in its determination of the quantity of cocaine that Anthony and others attempted to steal and distribute. Although the government correctly concedes error as to one of the evidentiary rulings, it was harmless, and Anthony's other arguments do not succeed. Thus, for the reasons elaborated below, we will affirm Anthony's conviction and sentence.

## BACKGROUND

Six men hatched a plan to steal several kilograms of cocaine from the home of a suspected North Philadelphia drug dealer. Three of them would enter from a roof skylight, while three others would simultaneously serve as lookouts, using police scanners, walkie-talkies, and cell phones to alert the intruders if the police arrived. In addition to stealing the cocaine, the men aspired to resell it and divide the proceeds.

That brazen plot failed. While on the roof, the intruders received warnings from the lookouts that the police were coming. The intruders fled the roof but were quickly apprehended a few blocks away. The lookouts escaped.

But the police eventually tracked down the missing lookouts – one by one. After one of the lookouts was identified, he along with one of the intruders identified then thirty-nine-year-old Romel Anthony as another lookout. For his role in that scheme, a grand jury indicted Anthony for attempted possession with the intent to distribute cocaine. *See* 21 U.S.C. §§ 841(b)(1)(C), 846; *see also* 18 U.S.C. § 3231 (providing

2

federal district courts with jurisdiction over cases involving offenses against the laws of the United States). Following a trial, a jury convicted Anthony of attempted possession with the intent to distribute cocaine,[1] and the District Court imposed a prison sentence of 125 months. Anthony timely appealed that conviction and sentence, bringing this matter within this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742(a).

## DISCUSSION

On appeal, Anthony raises four issues. He challenges the sufficiency of the government's evidence of his guilt, and he also contends that the District Court erred in two evidentiary rulings at trial. Finally, he disputes the District Court's finding of the quantity of cocaine used to calculate the Guidelines Range for his 125-month prison sentence. Anthony cannot prevail on any of those arguments.

### A. Sufficient Evidence Supports Anthony's Conviction.

Anthony attacks the overall sufficiency of the evidence used to convict him. In evaluating a challenge to the sufficiency of the evidence, a reviewing court assesses the record "in the light most favorable to the prosecution," to determine if "any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (alteration in original) (internal citation and quotation marks omitted); *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (articulating same legal standard). The reviewing court does not sit "as a thirteenth juror," and the verdict "must be upheld as long as it does not 'fall below the threshold of bare rationality.'" *Caraballo-Rodriguez*, 726 F.3d at 431 (quoting *Coleman*

---

[1] The government also charged Anthony with aiding and abetting the use or carry of a firearm during a crime of violence, *see* 18 U.S.C. §§ 2, 924(c)(1)(A), but the jury acquitted Anthony of that count.

3

*v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam)). The jury's verdict in this case clears that standard by a wide margin.

A rational juror could rely on testimony from either cooperating witness to convict Anthony. *See United States v. Perez*, 280 F.3d 318, 344 (3d Cir. 2002) (explaining that accomplice testimony, standing alone, is sufficient to sustain a conviction); *United States v. De Larosa*, 450 F.2d 1057, 1060 (3d Cir. 1971) (same). Those two witnesses implicated Anthony directly and in no uncertain terms. The first cooperating witness testified that Anthony, armed with a police scanner, acted as a lookout, ready to alert the others if the police arrived. The second cooperating witness testified similarly; he said that Anthony remained in constant contact with his accomplices, prepared to alert them if the police arrived. Both witnesses further testified that Anthony attended the prior planning meetings and thus knew that the group aimed to steal and resell drugs.

In addition, records of cell phone communications bolstered the case against Anthony. For the communications between cell phones to be probative, the government had to associate certain cell phones with specific individuals. The government was able to do this in part because law enforcement seized three of the six men's cell phones – but not Anthony's – as part of a related investigation. And the contact information on those phones associated certain phone numbers with specific persons, including Anthony. Having associated a cell phone with its user, the call records indicated not only frequent contact between Anthony and the intruders in the hours before the break-in, but also a call from Anthony – who had a police scanner – to an intruder 26 seconds after the police dispatched to the scene. This evidence too, if construed in the light most favorable to the government, would allow a rational juror to conclude that Anthony violated the federal drug laws.

In sum, the testimony of the two cooperating witnesses and the records of cell phone communications – either in combination or in isolation – provided a basis for a rational jury to find that Anthony acted as a lookout and is guilty of the attempted drug offense. *See, e.g.*, *United States v. Powell*, 113 F.3d 464, 467 (3d Cir. 1997) (affirming conviction of defendant who served as a lookout to a drug transaction).

## B. The Non-Percipient Testimony From a Lay Witness Was Harmless.

Anthony's first evidentiary challenge is his strongest argument. He objected at trial because the officer who testified that certain cell phones belonged to specific persons did not personally seize the cell phones; instead, that officer learned who the cell phones belonged to from another officer. As the government now concedes, Anthony was correct. The officer's non-percipient testimony should not have been permitted: a lay witness cannot testify to the truth of information learned from a third party. *Compare* Fed. R. Evid. 602 (requiring personal knowledge for lay witness testimony), *and* Fed. R. Evid. 701(a) (limiting lay witness opinion testimony to opinions "rationally based on the witness's perception"), *with* Fed. R. Evid. 703 (permitting expert witnesses to testify based on learned facts or data as long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject"); 2 Kenneth S. Broun et al., *McCormick on Evidence* § 247 (8th ed. 2022) (explaining where the witness could "only have spoken from conjecture or report of other persons, the proper objection is not hearsay but want of personal knowledge").

But under the harmless error doctrine, not all evidentiary errors warrant reversal. *See Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986) (explaining that error is "virtually inevitable" and that "the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence"); *Gov't of the V.I. v. Toto*,

529 F.2d 278, 284 (3d Cir. 1976) (adopting the "middle ground" approach to harmless error set forth in Roger J. Traynor, *The Riddle of Harmless Error* 35 (1970)); *see also* Traynor, *supra*, at ix ("The well-being of the law encompasses a tolerance for harmless errors adrift in an imperfect world."). For an evidentiary error to be harmless, it must be "highly probable that the improperly admitted evidence did not contribute to the jury's judgment of conviction." *United States v. Lopez*, 340 F.3d 169, 177 (3d Cir. 2003) (internal citation and quotation marks omitted); *United States v. Vosburgh*, 602 F.3d 512, 539–40 (3d Cir. 2010) (applying this same harmless error standard to evaluate the erroneous admission of hearsay).

Here, the government has met its burden to establish that the error did not contribute to the jury's judgment of conviction. *See United States v. Vazquez*, 271 F.3d 93, 100 (3d Cir. 1993) (citing *United States v. Olano*, 507 U.S. 725, 734–35 (1993)) (explaining that the government has the burden of proving harmless error). As explained above, the government's case at trial relied chiefly on the testimony of two cooperating witnesses, who directly implicated Anthony. And the now-conceded evidentiary error has no bearing on the cooperators' testimony, which provided an independent and sufficient ground for Anthony's conviction. In addition, other record evidence would allow a jury to conclude which cell phone belonged to each person. Specifically, the seized cell phones contained an email address and contact lists that allowed the jury to identify specific phone numbers as belonging to Anthony's co-defendants. This other evidence – the direct testimony regarding Anthony's guilt and the alternative basis of associating certain cell phones with specific users – renders any evidentiary error harmless as it is "highly probable that the improperly admitted evidence did not contribute to the jury's judgment of conviction." *Lopez*, 340 F.3d at 177 (internal citation

and quotation marks omitted); *see also United States v. McGlory*, 968 F.2d 309, 337 (3d Cir. 1992) (explaining that "other evidence" presented to the jury may establish the erroneously admitted fact, thus rendering the error harmless); *Vosburgh*, 602 F.3d at 540 (same); *United States v. Straker*, 800 F.3d 570, 602, 607 (D.C. Cir. 2015) (holding that conceded *Bruton* error was harmless where two cooperators and cell phone evidence provided "overwhelming evidence" of the defendant's guilt).[2]

### C. Admission of Summary Charts and Related Testimony Associating a Phone Number with Anthony Do Not Provide a Basis for Overturning the Jury's Verdict.

Anthony's other evidentiary objection also relates to the admission of evidence associating Anthony with a certain cell phone number. A federal agent prepared two summary charts that diagrammed cell phone communications on the day of the break-in. Each chart included the name and photograph of each person associated with a phone number, and Anthony's name and photo appeared next to one phone number. The agent also testified that she believed the cell phone number on the chart belonged to Anthony. Anthony objected to this attribution.[3]

In response, the District Court ensured that a basis existed in the record evidence for associating the cell phone number with Anthony. Satisfied that the attribution could be proved by evidence in the record, the District Court overruled that objection, permitted the testimony, and admitted the summary chart into evidence. It also instructed the jury that it could disregard the agent's attribution and the summary charts.

---

[2] As a related contention, Anthony argues that the government failed to authenticate the cell phone evidence, as the testifying officer did not have firsthand knowledge of the seizure. *See* Fed. R. Evid. 901. But other trial evidence provided a basis for authenticating the cell phone evidence, *see generally* Fed. R. Evid. 901(b) (discussing the various ways to authenticate evidence), and for the same reasons as the underlying objection, even if there were an authentication error, it would be harmless.

[3] Anthony did not object to the agent's attribution of phone numbers to other defendants.

A district court has a great deal of discretion over the use of summary charts and associated testimony. Under the Federal Rules of Evidence, a trial judge "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth [and] avoid wasting time." Fed. R. Evid. 611(a). Consistent with that standard, this Court has approved the use of summary charts and corresponding explanatory testimony. *See, e.g.*, *United States v. Jarmon*, 14 F.4th 268, 273 (3d Cir. 2021) (permitting testimony describing an organizational "chart prepared by the prosecution showing the Government's theory" of a criminal enterprise). Here, after confirming a factual basis for the attribution of the cell phone number to Anthony, the District Court instructed the jury that it did not have to believe the attribution on the summary chart. *See* Trial Tr. at 120:12–16 (June 8, 2018) (App. 925) ("The charts themselves are not evidence or proof. If the charts do not correctly reflect the evidence in the case, you should disregard them and determine the facts from the underlying evidence."). Allowing the summary chart under these circumstances was not an abuse of discretion.

But also over Anthony's objection, the District Court permitted the agent to provide her opinion that the cell phone number on the chart belonged to Anthony. Because that lay opinion was not "rationally based on the witness's perception," it should not have been permitted. Fed. R. Evid. 701(a). Nonetheless, that error was harmless. As the District Court determined before allowing the summary chart, other evidence in the record supported the conclusion that the cell phone number belonged to Anthony. Also, as with his first evidentiary objection, the case against Anthony did not depend solely upon the cell phone records – two cooperating witnesses testified to his involvement in the plot to steal and redistribute cocaine. *See United States v. Mitchell*, 816 F.3d 865,

8

877 (D.C. Cir. 2016) (holding that error regarding summary testimony connecting a phone number to the defendants was harmless); *United States v. Dukagjini*, 326 F.3d 45, 62 (2d Cir. 2003) (holding that error regarding case agent testimony was harmless where multiple cooperating witnesses "testified extensively" as to defendant's guilt); *United States v. Garcia*, 413 F.3d 201, 217–19 (2d Cir. 2005) (same). Accordingly, as an error that did not, to a high probability, contribute to the jury's verdict, the admission of the agent's improper lay opinion does not justify setting aside Anthony's conviction.

## D. Anthony's Base Offense Level Was Not Clearly Erroneous.

Anthony also challenges the calculation of the base offense level for his sentence. The District Court assigned him a base offense level of 24 on the finding that he attempted to possess with the intent to distribute at least 500 grams of cocaine. *See* U.S.S.G. § 2D1.1(c)(8). Anthony objected, claiming that the amount of cocaine was speculative because the police never recovered any cocaine.

On clear error review, the District Court's finding must be upheld. *See United States v. Rodriguez*, 40 F.4th 117, 120 (3d Cir. 2022). At sentencing, a district judge may estimate drug quantities if in doing so, he or she relies on information that has "sufficient indicia of reliability to support its probable accuracy." *United States v. Paulino*, 996 F.2d 1541, 1547 (3d Cir. 1993) (quoting U.S.S.G. § 6A1.3(a)). And here, both cooperating witnesses testified that the group planned to steal multiple kilograms of cocaine. That suffices, and the District Court did not clearly err in finding that the quantity of cocaine was at least 500 grams.

* * *

For the foregoing reasons, we will affirm the judgments for Anthony's conviction and sentence.