NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2300
_____

UNITED STATES OF AMERICA

v.

LAQUAN L. KELLAM,
                            Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-14-cr-00323-001)
District Judge:  Hon. Sylvia H. Rambo
_____

Submitted Under Third Circuit LAR 34.1(a)
September 14, 2018

Before:   JORDAN, VANASKIE, and RENDELL, *Circuit Judges*

(Filed: September 28, 2018)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Laquan Kellam appeals the District Court's denial of his motion to suppress evidence that was seized during his warrantless arrest and the subsequent warrantless search of his residence. He also appeals his judgment of conviction and sentence. We will affirm.

## I.   BACKGROUND

### A.   Motion To Suppress Hearing[1]

On three separate dates in June 2014, Detective David Lau of the Harrisburg Police Department organized controlled drug transactions using a confidential informant. On each occasion, Lau witnessed the informant call Kellam and engage in a brief conversation in which the informant arranged to buy crack cocaine at a certain location. Then, at that location, Lau video-recorded or photographed the controlled transaction. On each occasion, the informant returned with substances later confirmed by the Pennsylvania State Police Lab to be crack cocaine. Based on those drug transactions, Lau determined that he had probable cause to take Kellam into custody, but he did not seek an arrest warrant.

---

[1] The facts recounted here derive from the suppression hearing testimony of Detective David Lau, which the Court credited over Kellam's testimony at that hearing. *See infra* Section II.B. We review factual findings for clear error. *United States v. Igbonwa*, 120 F.3d 437, 440 (3d Cir. 1997). Our "review is more deferential with respect to determinations about the credibility of witnesses[.]" *Id.* at 441. "[W]hen the district court's decision is based on testimony that is coherent and plausible, not internally inconsistent and not contradicted by external evidence, there can almost never be a finding of clear error." *Id.*

Approximately three weeks after the last controlled transaction, Lau was conducting surveillance at 3212 Green Street, the residence he had identified as belonging to Kellam and Kellam's girlfriend, Ashley Smith. Assisting Lau on that day were two Dauphin County sheriff's deputies. After observing Kellam exit the residence, and, based on the information developed from the three earlier drug transactions involving Kellam, Lau asked the two deputies to take Kellam into custody. The two stopped Kellam nearby, and Lau arrived at the scene as they were effecting the arrest.

Lau informed Kellam that the arrest was for crack cocaine sales, and he advised him of his constitutional rights, including his *Miranda* rights. When asked whether there was anything on his person, Kellam was cooperative, telling Lau that he had three "eight balls" in his pocket, (App. at 11), which were each approximately three and half grams of separately packaged crack cocaine. Lau asked Kellam if there was money, drugs, or weapons at the residence, and Kellam answered that there was "a lot." (App. at 13.) Lau then asked for Kellam's consent to go back to the house to recover those items. Kellam agreed and said he wanted to cooperate and would take the arresting officers to his house. Lau did not obtain written consent for the impending search, nor did he seek a search warrant.

Kellam was escorted in handcuffs back to the residence. Upon arrival, he gave his key to Lau and told him to go ahead and go inside. The law enforcement officers entered the kitchen and encountered Smith, who also consented to a search of the residence. Based on information provided by Kellam, Lau recovered about fifteen and a half ounces

of crack cocaine from a shoe box on a shelf in the kitchen, a gun in a holster from an upstairs bedroom, and cash in the bottom drawer of a dresser in that same bedroom.

## B.     Procedural History

A grand jury indicted Kellam for various drug charges. More particularly, in a superseding indictment, Kellam was indicted on three counts of distribution and possession with the intent to distribute cocaine base (*i.e.*, crack cocaine), in violation of 21 U.S.C. § 841(a)(1), one count of possession with the intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A).

Kellam moved to suppress all of the evidence seized during his arrest and the subsequent search of his residence. The District Court denied that motion. It concluded that the controlled buys provided probable cause for Lau to believe that Kellam had committed a crime, and it found that Kellam had voluntarily consented to the search of his residence.

After a two-day trial, a jury found Kellam guilty of all five counts in the indictment. At trial, Lau testified to largely the same version of events that he had described at the suppression hearing. *See supra* Section I.A. He also testified as to his general experience in investigating drug crimes. *See infra* note 3. The confidential informant testified to buying crack from Kellam and helping Lau with the investigation.

The District Court later held a sentencing hearing and sentenced Kellam to 181 months' imprisonment, five years of supervised release, and a $500 assessment. A Presentence Investigation Report ("PSR") was prepared and, as to the four drug counts,

4

recommended a criminal history category of I and a total offense level of 32, which included a two-point enhancement for obstruction of justice under the United States Sentencing Guidelines ("U.S.S.G." or "guidelines") § 3C1.1 and corresponded to a guidelines recommended imprisonment range of 121 to 151 months.

The PSR recommended the obstruction of justice enhancement for two reasons. First, after receiving the government's pretrial discovery, Kellam identified the confidential informant, confronted him at his home, and persuaded him to record a statement with Kellam's counsel that the three drug deals did not occur. Second, Kellam lied under oath at the suppression hearing when he denied selling drugs or driving a black Nissan owned by Smith. Video evidence and testimony at trial established that Kellam sold crack and drove the black Nissan when delivering crack to the informant.

On the firearm count, the PSR recommended the statutory minimum of 60 months' imprisonment to run consecutively to the term of imprisonment for the drug offenses. 18 U.S.C. §§ 924(c)(1)(A), 929(a)(1); *see also* U.S.S.G. § 2K2.4(b) cmt.2 ("Each of 18 U.S.C. §§ 924(c) and 929(a) ... requires that a term of imprisonment imposed under that section shall run consecutively to any other term of imprisonment.").

Kellam timely appealed.

5

## II.    DISCUSSION[2]

Kellam raises two arguments challenging the denial of his motion to suppress, one argument challenging his conviction, and one argument challenging his sentence. None are persuasive.

### A.    The Warrantless Arrest

Kellam says that the District Court erred in denying his motion to suppress because the warrantless arrest was conducted by deputy sheriffs who were not authorized to effectuate the arrest. He argues that, under Pennsylvania law, such deputies "may only make a warrantless arrest for felonies and breaches of the [peace] *committed in their presence*[,]" (Opening Br. at 12), and, here, no crimes were committed in their presence. We decline to consider Kellam's argument, however, because he never raised it before the District Court.

"[A] suppression argument raised for the first time on appeal is waived ... absent good cause." *United States v. Rose*, 538 F.3d 175, 182 (3d Cir. 2008). In *United States v. Joseph*, we addressed "the degree of particularity required to preserve an argument" for appeal. 730 F.3d 336, 338 (3d Cir. 2013). We said that a party must raise arguments, not issues, to preserve them for appeal. *Id.* at 341. An issue is a broad question or legal rule that can encompass more than one argument, while an argument is a contention, theory, ground, or basis. *Id.* at 340.

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

At the District Court, Kellam challenged the validity of the controlled transactions as a basis for probable cause to arrest him, but now on appeal, he presses a different argument – that the deputy sheriffs lacked legal authority to effectuate his arrest. Because that argument was not made to the District Court and because Kellam does not provide good cause for its omission, we deem it forfeited. Kellam does not press the argument that Lau lacked probable cause for the arrest.

**B.  The Warrantless Search**

Kellam next argues that the District Court erred in denying his motion to suppress evidence gathered during the warrantless search of the Green Street residence. He says that his and Smith's consent was involuntary or coerced, when considered under the totality of the circumstances. He further argues that his consent was involuntary, given his level of education and intelligence. Whether the consent to search was voluntary is a question of fact that we review for clear error. *United States v. Williams*, 898 F.3d 323, 332 (3d Cir. 2018). We will not disturb the District Court's finding "unless it is (1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Id.* (internal quotation marks and citation omitted).

A warrantless search of a residence is "presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). But no warrant or probable cause is necessary to search a residence when an individual with authority over the premises voluntarily consents to the search. *United States v. Matlock*, 415 U.S. 164, 169-71 (1974); *United States v. Stabile*, 633 F.3d 219, 231 (3d Cir. 2011). In determining whether a consent

7

was voluntary, we examine the totality of the circumstances and focus on several factors, including: "age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; ... the use of physical punishment[;] ... [and] [t]he setting in which the consent was obtained[.]" *Stabile*, 633 F.3d at 231 (internal quotation marks and citations omitted). "[W]hen the district court's decision is based on testimony that is coherent and plausible ... there can almost never be a finding of clear error." *United States v. Davis*, 726 F.3d 434, 440 (3d Cir. 2013) (quoting *United States v. Igbonwa*, 120 F.3d 437, 441 (3d Cir. 1997)).

Here, we discern no clear error in the District Court's finding that Kellam voluntarily consented to a search of the Green Street residence. After considering testimony from Lau and Kellam, the Court found Lau's testimony more credible. There is nothing to indicate error, let alone clear error, in that conclusion, so we take the Court's factual findings concerning consent to be accurate.

According to Lau's testimony, credited by the District Court, he asked for and obtained Kellam's consent to search the residence. Even though Kellam says that he only has a ninth-grade education and suffers from a learning disability, Lau testified that Kellam appeared to be coherent and to understand the questions he was asking. True, Kellam was in custody and surrounded by law enforcement authorities when Lau asked for consent, but we must consider those facts in light of the totality of the circumstances. Lau informed Kellam "that he had an absolute right to deny that consent ... [and] compel [Lau] ... to make application to the Court based on the facts involved in this case for a search warrant." (App. at 13.) Despite that, Kellam decided that he wanted to cooperate.

8

He gave his consent, and, at the residence, Kellam gave his key to Lau to open the rear door. Kellam then directed the authorities to the locations of the drugs, firearm, and cash that were later recovered.

In addition, Lau obtained consent from Smith to search the residence. As a cohabitant of the residence, she too had authority to provide consent for the search. *Stabile*, 633 F.3d at 231. Again, the finding that she gave consent is not clearly erroneous.

### C. Trial Testimony

Kellam challenges Lau's testimony at trial as improperly providing expert evidence. Kellam notes that Lau was not admitted as an expert, and he argues that the Court erred by allowing Lau to effectively testify as an expert and further erred by failing to give a cautionary instruction to the jury regarding the dual role of Lau as a fact witness and expert witness.[3] We review Kellam's objections to Lau's trial testimony for plain error because he did not preserve them in the District Court. "To demonstrate plain error, an appellant must establish that (1) there is an error; (2) the error is clear or obvious; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *United States v.*

---

[3] Specifically, Kellam points to Lau's testimony regarding the street value of crack cocaine, how drugs are divided and packaged to be sold on the street, the rarity of finding crack cocaine users to have crack with them because they have an urge to consume it, the common practice in the drug culture of having a gun for protection, the jargon used by those in the drug culture, and Lau's conclusion that, based on all the evidence, the gun was Kellam's.

*Fulton*, 837 F.3d 281, 294 (3d Cir. 2016) (internal quotation marks, citations, and alterations omitted). Kellam argues that the error was plain and the resulting prejudice was "self-evident" because Lau "was permitted to give expert testimony regarding his own investigation," which "unreasonably provided an aura of reliability to his testimony ... [and] likely provided more weight to the jury than it deserved[,]" and that the "[D]istrict [C]ourt did nothing to minimize the prejudice." (Opening Br. at 21.) We disagree.

Even assuming that the District Court erred and that the error was plain, Kellam's arguments cannot survive plain error review because he cannot establish that the error affected his substantial rights or seriously affected the fairness, integrity, or public reputation of judicial proceedings. That conclusion rests on the following four reasons.

First, although Lau was not formally admitted as an expert witness, his trial testimony about his experience in investigating drug crimes demonstrates that he would have qualified as an expert, if tendered, and therefore would have been allowed to provide that testimony. Lau said that he had worked for the Harrisburg Police Department for approximately twenty-four years, five of which were with the Vice Unit, which handles drug-related criminal activity. He thus had extensive relevant experience. Second, Kellam had a full and fair opportunity to cross-examine Lau and challenge any of the purportedly improper testimony. Third, in the charge to the jury, the District Court repeatedly emphasized the jury's role in deciding the facts, and, in particular, the Court advised the jury how to consider testimony from law enforcement witnesses. (*See* S.A. at 404 ("The fact that a witness is employed as a law enforcement officer does not mean

that his or her testimony necessarily deserves more or less consideration or greater or lesser weight than that of any other witness.").)  Fourth and finally, the alleged error did not affect other evidence at trial, such as the informant's testimony about his involvement in the investigation and how he had bought drugs from Kellam.

Kellam's arguments amount to sheer speculation that the outcome of his proceedings would have been different if Lau had not given testimony that could be called expert evidence.  *Cf. United States v. DeMuro*, 677 F.3d 550, 562 (3d Cir. 2012) (assuming arguendo that testimony was improperly admitted expert witness opinion, but nevertheless concluding there was no plain error because any error did not satisfy the fourth prong of plain error review).  There is, however, no basis to conclude that Lau's testimony negatively affected the fairness, integrity, or public reputation of the judicial proceedings in this case.  Kellam has thus failed to show plain error warranting reversal.[4]

**D.    The Two-Level Sentencing Enhancement For Obstruction Of Justice**

Finally, Kellam challenges his sentence as improperly including a two-level enhancement for obstruction of justice under § 3C1.1 of the guidelines.  The District

---

[4]  Kellam also argues that the District Court violated Federal Rule of Evidence 704(b) when it let Lau testify that, "[b]ased on [his] training and experience and being involved in drug-related investigations, based on there being weapons involved with those drug-related investigations, circumstantially based on all the facts involved in this case, [he] had strong reason to suspect that that [firearm] was, in fact [Kellam's] weapon."  (App. at 191.)  But we decline to consider that argument because it was raised in a one-sentence footnote in his opening brief and was not explained or developed.  *See United States v. Hoffecker*, 530 F.3d 137, 162-63 (3d Cir. 2008) (concluding issue was waived because a "one-sentence footnote" was insufficient to raise it in an opening brief); *see also John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").

11

Court applied that enhancement based on the PSR's recommendation and trial testimony showing that Kellam persuaded the informant to provide a statement to Kellam's lawyer that the three drug transactions did not occur. Kellam preserved his objection to the § 3C1.1 enhancement and argues that the evidence was insufficient to support the enhancement and that any purported obstruction was immaterial because the statement was never used by Kellam at trial.

For purposes of applying a sentencing enhancement, district courts must find facts by a preponderance of the evidence. *United States v. Grier*, 475 F.3d 556, 568 (3d Cir. 2007). We exercise plenary review over the District Court's construction of the guidelines, and we review the factual findings underlying a sentence for clear error. *United States v. Douglas*, 885 F.3d 145, 150 n.3 (3d Cir. 2018). Section § 3C1.1 permits a two-level sentencing enhancement when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction[.]" U.S.S.G. § 3C1.1 (2016).[5] Obstructive conduct under § 3C1.1 includes committing perjury as well as "threatening, intimidating, or otherwise unlawfully influencing a ... witness." *Id.* § 3C1.1 cmt. n.4(A), (B); *see also United States v. Boone*, 279 F.3d 163, 180 (3d Cir. 2002) (affirming two-level obstruction of justice enhancement when defendant attempted to coerce a witness into signing a false exculpatory letter).

Here, the District Court did not err in applying the obstruction of justice enhancement based on the informant's testimony that Kellam had asked him to lie. At

---

[5] As stated in the PSR, we apply the 2016 version of the guidelines.

trial, the informant testified that Kellam approached him at his home and requested that he provide a false statement to Kellam's defense lawyer that the drug transactions had not occurred. And the informant in fact followed through on Kellam's request. t is of no moment that the false statement was not shown to the jury. What matters is that there was ample evidence to support the Court's finding that Kellam attempted to influence a witness's testimony when he approached the informant and asked him to provide false evidence. On this record, the District Court rightly applied the § 3C1.1 enhancement.[6]

III.  CONCLUSION

For the foregoing reasons, we will affirm the District Court's denial of Kellam's motion to suppress and will also affirm the judgment of conviction and sentence.

---

[6] Because we will affirm the District Court's decision to apply the § 3C1.1 enhancement based on Kellam persuading the informant to provide a false statement to Kellam's attorney, we do not address the other ground for the enhancement, namely, the perjured testimony Kellam allegedly gave at the suppression hearing.