**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 25-1048

———————

UNITED STATES OF AMERICA

v.

DIEGO CASTILLO-PEDRAZA,

Appellant

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 5:23-cr-00169-001)
District Judge: Honorable Joseph F. Leeson, Jr.

———————

Submitted under Third Circuit L.A.R. 34.1(a)
January 12, 2026

Before: MATEY, CHUNG, and AMBRO, <u>Circuit Judges</u>

(Opinion filed: January 14, 2026)

———————

OPINION[*]

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, Circuit Judge

Diego Castillo-Pedraza, convicted on one count of possession and aiding and abetting possession of methamphetamine with intent to distribute it, challenges the admission of testimony from cooperating witnesses at trial and his below-Guidelines sentence. For the reasons below, we affirm his conviction and sentence.

**I**

In 2019, the FBI launched an investigation of methamphetamine trafficking that led to the interception of a methamphetamine shipment and the arrest of Mario Ceballos. Ceballos pled guilty and entered into a cooperation agreement with the Government. He told the Government that Defendant Diego Castillo-Pedraza orchestrated the shipment and directed him to pick up the parcel, that they intended to divide and sell the methamphetamine, and that Castillo-Pedraza regularly sold drugs to the owner of the house where the parcel was to be delivered.

In March 2021, local law enforcement searched that house. Its owner, Donald Schwambach, told police he had drugs in a safe, some of which he was holding for someone else. Police seized packages of methamphetamine from the safe. On one package, forensic analysis revealed a fingerprint from Castillo-Pedraza.

Schwambach was arrested by local authorities. After the federal Government adopted the local case against him, Schwambach proffered that Castillo-Pedraza stored methamphetamine in Schwambach's safe pending distribution; that Castillo-Pedraza intended to pick up the 2019 shipment from his house but was arrested before it arrived; and that, while Schwambach was released on bail, Castillo-Pedraza visited him to request

money for the methamphetamine seized by the police in 2021. Schwambach entered into a cooperation agreement and pled guilty.

Based on the package of methamphetamine seized from Schwambach's safe, the Government indicted Castillo-Pedraza for possession and aiding and abetting possession with intent to distribute methamphetamine. Before trial, the District Court granted the Government's motion *in limine* to admit the testimony of Ceballos and Schwambach regarding their relationships with Castillo-Pedraza, Castillo-Pedraza's connection to Schwambach's house, and Castillo-Pedraza's connection to the 2019 and 2021 drug seizures. At trial, the Government offered the testimony, and the District Court instructed the jury that they may consider evidence of Castillo-Pedraza's prior trafficking at Schwambach's house and his relationships with Ceballos and Schwambach only for the purpose of deciding whether he had the knowledge and intent necessary for the charged offense. Castillo-Pedraza testified in his own defense that he would go to Schwambach's house to buy marijuana and that Schwambach would toss bags of methamphetamine to him and encourage him to try it. The jury returned a guilty verdict.

At sentencing, the District Court included the drug weight from the 2019 shipment in its calculation of Castillo-Pedraza's offense level under the United States Sentencing Guidelines, yielding a sentencing range of 324 to 405 months. It granted the parties' joint motion for a downward variance and imposed a sentence of 240 months.

Castillo-Pedraza appealed his conviction and sentence. The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction over his appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

3

## II

First, Castillo-Pedraza challenges the District Court's admission of the cooperators' testimony under Federal Rule of Evidence 404(b), a decision we review for abuse of discretion. *See United States v. Garner*, 961 F.3d 264, 273 (3d Cir. 2020).

Rule 404(b) prohibits the use of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose." *Id.* Accordingly, Rule 404(b) allows evidence that is "(1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested." *United States v. Caldwell*, 760 F.3d 267, 277–78 (3d Cir. 2014) (citing *United States v. Davis*, 726 F.3d 434, 441 (3d Cir. 2013)). A district court's reasoning in admitting evidence under Rule 404(b) "should be detailed and on the record." *Id.* at 277 (quoting *Davis*, 726 F.3d at 442).

As the District Court's written opinion explained in detail, each requirement is met here. The District Court admitted the cooperators' testimony for the non-propensity purposes of establishing knowledge and intent, which involved explaining Castillo-Pedraza's relationship with Ceballos and Schwambach, his connection to Schwambach's house, why he stored methamphetamine there, and his intent for the methamphetamine so stored. And as the District Court observed, that testimony was relevant because "whether Castillo-Pedraza had pre-existing relationships, arrangements, and/or illicit drug-dealings

4

with the cooperating witnesses at [Schwambach's house] is of consequence and tends to make it more or less probable that Castillo-Pedraza stored the methamphetamine at the [h]ouse with [Schwambach's] consent and with the plan to distribute or sell the drugs." J.A. at 19–20. This evidence is highly probative for connecting Castillo-Pedraza to drugs discovered in another person's house and showing his intent to distribute them, and its probative value is not outweighed by risk of undue prejudice. *See United States v. Butch*, 256 F.3d 171, 175, 177 & n.5 (3d Cir. 2001) (admitting testimony regarding witness's prior criminal relationship with defendant); *Garner*, 961 F.3d at 274 (admitting prior drug trafficking conviction to show knowledge and intent to distribute). Finally, the jury received a limiting instruction consistent with our model instruction on evidence of a defendant's prior bad acts or crimes. Therefore, the District Court properly admitted the cooperators' testimony under Rule 404(b).

### III

Castillo-Pedraza also challenges the District Court's inclusion of the drug weight from the 2019 shipment in his offense level calculation. At sentencing, the Government bears the burden of proving drug quantities by a preponderance of the evidence. *United States v. Self*, 681 F.3d 190, 201 (3d Cir. 2012). We review the District Court's factual findings for clear error. *United States v. Yeung*, 241 F.3d 321, 322 (3d Cir. 2001).

The Court included the 2019 shipment as "relevant conduct" under § 1B1.3 of the Sentencing Guidelines, which instructs sentencing judges to consider offenses "that were part of . . . [a] common scheme or plan as the offense of conviction" if § 3D1.2(d) would have required grouping of counts. Section 3D1.2(d), in turn, requires grouping of drug-

trafficking counts. Therefore, as drug-trafficking conduct, the 2019 shipment would group under § 3D1.2(d). The critical question is whether the shipment was part of the charged offense's common scheme or plan.

Characteristics of a common scheme or plan include common locations, accomplices, criminal methods, or purposes. *See United States v. Boone*, 279 F.3d 163, 178 (3d Cir. 2002). Here, the District Court noted that the 2019 offense "occurred at the same address" and was connected to the offense of conviction "by common accomplices, similar modus operandi, and a common purpose." J.A. at 193–94. And although twenty months elapsed between the 2019 shipment and the 2021 seizure, Castillo-Pedraza was incarcerated for twelve of those months. Accordingly, the District Court did not clearly err by concluding that both offenses were part of a common scheme "whereby [he] relied on the same accomplice to receive and store methamphetamine for him." J.A. at 194.

In the alternative, Castillo-Pedraza contends the Government failed to prove his involvement in the 2019 shipment by a preponderance of the evidence. But two witnesses directly involved in the 2019 shipment testified to his participation, and Castillo-Pedraza does not explain why the District Court clearly erred by crediting their testimony over his. *See United States v. Brothers*, 75 F.3d 845, 853 (3d Cir. 1996) ("[A]ssessments of credibility by the trial court are entitled to great deference at the appellate level."). Accordingly, this argument is unconvincing as well.

## IV

Finally, Castillo-Pedraza challenges the procedural and substantive reasonableness of his sentence. We review both under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

Castillo-Pedraza's procedural reasonableness argument restates his "related conduct" argument and fails for the same reasons. His substantive unreasonableness argument comprises only a single paragraph in which he notes certain personal circumstances. He does not explain why those circumstances suggest that his sentence does not "fall[] within the broad range of possible sentences that can be considered reasonable," especially in light of the District Court's downward variance and discussion of his personal characteristics during the sentencing hearing. *See United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008). "'[A] district court's failure to give mitigating factors the weight a defendant contends they deserve' does not make a sentence substantively unreasonable." *United States v. Seibert*, 971 F.3d 396, 402 (3d Cir. 2020) (quoting *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007)). Accordingly, we see neither procedural nor substantive error in Castillo-Pedraza's sentence.

\* \* \* \* \*

For the foregoing reasons, we affirm Castillo-Pedraza's conviction and sentence.

7