**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3735
_____

UNITED STATES OF AMERICA,

v.

BRIAN HUNTER,
Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:18-cr-00002-001)
District Judge:  Honorable Leonard P. Stark
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 4, 2022
_____

Before:  CHAGARES, <u>Chief Judge</u>, SHWARTZ, <u>Circuit Judge</u>,
and PRATTER, <u>District Judge</u>.[*]

(Filed: April 5, 2022)
_____

OPINION[**]
_____

_____

[*]  Honorable Gene E.K. Pratter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.
[**]  This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Defendant Brian Hunter appeals the District Court's denial of his motion to suppress evidence obtained as a result of a traffic stop. Hunter argues that the officers did not have reasonable suspicion to stop the vehicle and that the officers' use of a canine unit unconstitutionally prolonged the stop, both in violation of his Fourth Amendment rights. For the reasons that follow, we will affirm.

I.

We write primarily for the parties and recite only the facts essential to our decision. The Delaware Police Department ("DPD") was surveilling Hunter in 2017 in connection with an ongoing drug investigation. On November 16, 2017, DPD officers observed Hunter engaging in what they suspected was a drug deal and had conducted GPS surveillance. Undercover officers later observed Hunter riding in the back seat of a white Kia Optima without wearing a seatbelt. The officers contacted DPD Officer Jacob Rankin about conducting a traffic stop on Hunter. Officer Rankin and his partner, Corporal Richie, located the Kia, and Officer Rankin, who was driving, positioned his car behind the Kia. The officers were then able to see into the rear of the Kia and to observe Hunter in the back seat. Officer Rankin testified that he suspected that Hunter was not wearing his seatbelt — or at least was not wearing the chest strap — because as Hunter moved, Officer Rankin did not see a chest strap extend as he would have expected. Officer Rankin then initiated a traffic stop. Officer Cunningham, who was in a nearby car, also responded.

2

Both Officer Rankin and Corporal Richie approached the Kia. Officer Rankin collected identification from the driver of the vehicle, the other passenger, and Hunter. After gathering this information, Officer Rankin returned to his vehicle to turn on his computer and conduct a license check on the driver and a warrant check on the driver and passengers. Camera footage of the stop indicates that the process of gathering the information and returning to the car took about three minutes. As Rankin returned to his car, Officer Cunningham called in a canine unit that was stationed nearby. Officer Rankin continued to process the driver's identification and discovered that there was a warrant for the driver's arrest and that his license was suspended. Officer Rankin instructed Corporal Richie to remove all individuals from the car to process the canine sniff and to take the driver into custody.

As Officer Rankin continued to process the citation in his car, the canine unit arrived, and Officer Cunningham and Corporal Richie asked Hunter, the driver, and a front seat passenger to step out of the car approximately seven minutes into the stop. The driver and the front passenger did so first. Approximately eight minutes into the stop, Hunter stepped out of the car, but then he reached back into the car, grabbed something, and fled the scene. Officer Rankin was still in his vehicle processing the citation but testified that he stopped as he observed Hunter's motion and left his car to assist the other officers. Officer Rankin did not finish processing the citations until several hours later. Officers chased Hunter and tasered him. Hunter fell onto the object he had grabbed, which was a black bag. Officers searched the bag and discovered heroin, crack, marijuana, and digital scales.

3

Hunter was initially indicted on one count of possession with intent to distribute twenty-eight grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and one count of possession of heroin, in violation of 21 U.S.C. § 844(a). Hunter moved to suppress the evidence obtained during the traffic stop. The District Court held a hearing on Hunter's suppression motion. Only Officer Rankin testified, but the Government also introduced dash cam footage from Officer Cunningham.

The District Court denied the motion. The court found Officer Rankin's testimony credible. The court credited that he observed Hunter exhibit behavior consistent with not wearing a seatbelt and therefore had reasonable suspicion to stop the car. The District Court further concluded that the stop did not last longer than was reasonably necessary for Officer Rankin to "complete the mission of the stop." Appendix ("App.") 119. Hunter entered a conditional guilty plea, which allowed him to appeal the suppression ruling, to one count of possession with intent to distribute twenty-eight grams or more of cocaine base, and was sentenced to sixty months of imprisonment. This appeal followed.

II.[1]

Hunter makes two arguments on appeal. First, he contends that the officers lacked reasonable suspicion to stop the Kia. Second, he argues that the officers unconstitutionally prolonged the stop through the use of the canine unit without independent probable cause or individualized suspicion. We examine each in turn.

---

[1] The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 3231. We have jurisdiction over the District Court's denial of Hunter's motion to suppress under 28 U.S.C. § 1291.

In reviewing a district court's denial of a suppression motion, we review the district court's findings of fact for clear error "but exercise plenary review as to its legality in light of the district court's properly found facts." United States v. Coles, 437 F.3d 361, 365 (3d Cir. 2006). A factual finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Lowe, 791 F.3d 424, 427 (3d Cir. 2015) (quoting United States v. Price, 558 F.3d 270, 277 (3d Cir. 2009)). If the district court's factual finding is "'plausible in light of the record viewed in its entirety,' we will not reverse it even if, as the trier of fact, we would have weighed the evidence differently." Price, 558 F.3d at 777 (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985)). "[A]ssessments of credibility by the trial court are entitled to great deference at the appellate level." United States v. Bros., 75 F.3d 845, 853 (3d Cir. 1996).

A.

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. Under Terry v. Ohio, 392 U.S. 1 (1968), an officer may stop an individual to conduct a "brief, investigatory stop" when the officer has "reasonable, articulable suspicion" that the individual is involved in criminal activity, Illinois v. Wardlow, 528 U.S. 119, 123 (2000). The reasonable suspicion standard articulated in Terry also applies to traffic stops. See United States v. Delfin-Colina, 464 F.3d 392, 397 (3d Cir. 2006); see also United States v. Green, 897 F.3d 173, 178 (3d Cir.

5

2018) ("Traffic stops are classified as a type of Terry stop, and may be initiated based on a reasonable suspicion that a traffic violation has occurred.").

Officer Rankin testified that he observed Hunter moving in the back seat in such a way that suggested that he was not wearing his seatbelt. The officer noted that as Hunter moved in the back seat, he did not see a chest strap extend with him. The District Court found that testimony credible. That finding was not clearly erroneous. As the District Court noted, at many points, Officer Rankin's testimony is uncontradicted. When a district court's "decision is based on testimony that is coherent and plausible, not internally inconsistent and not contradicted by external evidence, there can almost never be a finding of clear error." United States v. Davis, 726 F.3d 434, 440 (3d Cir. 2013) (quoting United States v. Igbonwa, 120 F.3d 437, 441 (3d Cir. 1997)). Hunter argues that Rankin's testimony is "incredible" because he could not possibly have seen that Hunter was not wearing a seatbelt and that Officer Rankin pointed to no specific facts to support his claim. Hunter Br. 8. To the contrary, Officer Rankin testified that after positioning his car behind the Kia, he was looking for the chest strap that one would expect to see if Hunter were wearing his seatbelt properly. The District Court did not err in concluding from that testimony that Rankin had reasonable suspicion to stop the Kia on the basis that, in violation of Delaware law, not all passengers were wearing seatbelts. See 21 Del. Code Ann. § 4802(a)(2) (requiring all passengers over age sixteen to wear a properly fastened seatbelt).

Hunter further argues that the traffic stop was clearly a pretext for the officers' drug investigation. Officer Rankin freely admitted as much, and the Government does

6

not deny that the stop was pretextual. But as the District Court observed, officers may conduct pretextual stops so long as there is reasonable, articulable suspicion that a traffic violation was taking place. See Green, 897 F.3d at 178 n.3 ("It has long been axiomatic that 'a traffic-violation arrest . . . [is not] rendered invalid by the fact that it was a mere pretext for a narcotics search.'" (quoting Whren v. United States, 517 U.S. 806, 813 (1996))).

## B.

That the officers had reasonable suspicion to stop the Kia does not end the inquiry. An otherwise lawful traffic stop can become unlawful if the stop is "prolonged beyond the time reasonably required to complete [the] mission" of the stop. Illinois v. Caballes, 543 U.S. 405, 407 (2005). The ordinary mission of a traffic stop, beyond issuing a ticket, includes other incidental checks, such as checking for insurance or outstanding warrants and confirming registration. See Rodriguez v. United States, 575 U.S. 348, 355 (2015). A canine sniff is not aimed at ensuring the safety of vehicles on the road but at "detect[ing] evidence of ordinary criminal wrongdoing." Id. (quoting City of Indianapolis v. Edmond, 531 U.S. 32, 40–41 (2000)).

An officer is permitted to complete certain "unrelated investigations," so long as they "do not lengthen a roadside detention." United States v. Garner, 961 F.3d 264, 269 (3d Cir. 2020). The stop is unlawful if these investigations "measurably extend" the duration of the stop absent reasonable suspicion or probable cause. Arizona v. Johnson, 555 U.S. 323, 333 (2009). "Authority for the seizure thus ends when tasks tied to the

7

traffic infraction are—or reasonably should have been—completed." <u>Rodriguez</u>, 575 U.S. at 354.

In <u>Rodriguez</u>, the Supreme Court clarified that "an officer may not extend the stop to conduct a dog sniff unless there is reasonable suspicion of criminal activity beyond the traffic violation." <u>Garner</u>, 961 F.3d at 270 (discussing <u>Rodriguez</u>, 575 U.S. at 354). The "critical question" is whether the sniff prolonged the duration of the stop, not whether the dog sniff occurred before or after the officer finished the mission of a traffic stop, usually by issuing a ticket. <u>Rodriguez</u>, 575 U.S. at 357–58. The moment at which the stop is prolonged is often referred to as the "<u>Rodriguez</u> moment." After this moment, officers must have reasonable suspicion to prolong the stop for a canine sniff. Anything that occurs after officers begin to prolong the stop cannot be considered in the reasonable suspicion analysis. <u>See</u> <u>Green</u>, 897 F.3d at 182. This Court has observed that the <u>Rodriguez</u> moment is often difficult to identify in practice. <u>See</u> <u>id.</u> at 179–80.

The District Court credited Officer Rankin's testimony that he was still processing the citation and performing normal checks associated with a traffic stop while another officer called for the canine and as the canine unit arrived. Accordingly, the District Court concluded that the time "before and during which the K9 search was occurring[] was all time that was reasonably necessary to complete the mission of the stop." App. 117.[2] We agree. It is uncontroverted that Officer Rankin took approximately eight

---

[2] Hunter argues that the Government improperly phrased its question to Officer Rankin when it asked whether the officer ever "stop[ped] pursuing the mission of the stop[.]" App. 62. He contends that this "parrots" the language of <u>Rodriguez</u>. Hunter Br. 14 n.3. Hunter did not object to the phrasing of this question at the suppression hearing. But in

minutes to collect the passengers' information, return to his vehicle, turn on his computer and log into the respective systems, discover an outstanding warrant for the driver, and begin writing a citation. At the time that Hunter fled the scene, Officer Rankin was still completing this process. We have "recognized the possibility that the Rodriguez moment occurs when an officer no longer pursues the tasks tied to the traffic stop even though he reasonably could have continued with those tasks." Garner, 961 F.3d at 270 (citing Green, 897 F.3d at 182). But there is no evidence to suggest that Officer Rankin deviated from the mission of his traffic stop or that he purposefully delayed completing those tasks. Officer Rankin did not have the opportunity to pursue any off-mission tasks before Hunter fled and thereby interrupted the process. Accordingly, we agree with the District Court that the stop was not prolonged for the canine unit.

Hunter points to the fact that the citations were not actually issued until approximately seven hours after the initial stop. Contrary to Hunter's argument, that does not suggest that the stop was prolonged so that officers could conduct a canine sniff. Officer Rankin testified that he had to stop his process when Hunter fled to assist the other officers, causing him to delay processing of the citation.

Hunter further contends that the fact that the officers did not remove the men from the car until the canine unit arrived suggests that the stop was unconstitutionally prolonged. This does not undermine the District Court's central conclusion — that we did not reach the Rodriguez moment in this case because Hunter fled before Officer

---

any event, Officer Rankin's specific answers to other questions make clear that he did not stop pursing his mission until Hunter fled the scene.

Rankin, who was carrying out his ordinary citation activities, could complete the citation. And in any event, Officer Rankin testified that he had to have the occupants step out of the car because the driver had an outstanding warrant. That would necessarily interrupt and delay his ability to complete the citation.

Accordingly, we agree with the District Court that, because Officer Rankin was diligently pursuing the tasks associated with the traffic citation at the time that Hunter fled, the Rodriguez moment had not occurred. The stop was therefore not prolonged as a result of the call for and arrival of the canine unit.[3]

### III.

For the foregoing reasons, we will affirm the order of the District Court.

---

[3] The Government also argues that, regardless of whether the canine sniff prolonged the stop, the officers had independent, reasonable, and even individualized suspicion to conduct a canine sniff based on the ongoing drug investigation and officers' observations that Hunter engaged in a suspected drug deal. Because we hold that the stop was not prolonged, we do not reach this argument.